**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00600-WYD-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

PATTERSON-UTI DRILLING COMPANY LLC,

     Defendant.

---

**CONSENT DECREE**

---

## I.  RECITALS

1.     The Parties to this Consent Decree ("Decree") are Plaintiff Equal Employment Opportunity Commission ("Commission" or "Plaintiff" or "EEOC"), an agency of the United States government, and Defendant Patterson-UTI Drilling Company LLC ("Defendant" or "Patterson-UTI").  This Decree is the product of collaboration between EEOC and Patterson-UTI on programmatic initiatives to reach a negotiated resolution of outstanding claims.

2.     This matter arose as a result of charges of discrimination filed by employees and former employees of Patterson-UTI alleging discrimination based on race, color, and/or national origin, including Charge No. 541-2007-00629, filed in November 2006, and Charge No. 541-2011-02063 which charge alleged widespread, nationwide discrimination against minority employees.  After conducting an investigation, EEOC found reasonable cause to believe the allegations of widespread, nationwide discrimination against minority employees, and found reasonable cause to

believe other allegations of discrimination asserted in various charges.  This lawsuit ensued alleging three nationwide pattern-or-practice claims affecting a large class of minority employees: (a) hostile work environment based on race, color, and/or national origin; (b) disparate treatment discrimination, including discharge or constructive discharge and other adverse actions; and (c) retaliation.

3.      Patterson-UTI denies the allegations made by EEOC and maintains that it did not engage in any unlawful action based on race, color, or national origin and that it did not retaliate against any employee or anyone else.  This Decree is a compromise of disputed claims, entered into to avoid further disruption, costs, delay, and expense of protracted litigation, and any payments or undertakings made hereunder are not and should not be construed as an admission of liability on the part of Patterson-UTI.  Prior to approving and entering this Decree, the Court has made no findings of fact or conclusions of law as to the merits of any of the matters at issue in this case.

4.      As to the issues resolved, this Decree is final and binding upon the Parties, their successors, and assigns.

5.      For the purpose of amicably resolving disputed claims, the Parties jointly request this Court to adjudge as follows:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

**II.  JURISDICTION**

6.      The Parties, desiring to settle this action by an appropriate Decree, agree to the jurisdiction of this Court over the Parties and the subject matter of this action, and agree to the power of this Court to enter a Decree enforceable against Patterson-UTI.

7.      The Parties waive the entry of findings of fact and conclusions of law.

## III.  DEFINITIONS

### A.  *Definitions of Minority Racial/Ethnic Groups*

8.    **Hispanic, Latino, or Spanish Origin:** A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race; for example, Mexican, Mexican American, Chicano, Puerto Rican, Cuban, Argentinean, Colombian, Dominican, Nicaraguan, Salvadoran, Spaniard, and so on.

9.    **Black or African American (not Hispanic, Latino, or Spanish Origin):** A person having origins in any of the black racial groups of Africa; for example, African American, Haitian, Nigerian, Jamaican, and so on.

10.    **American Indian or Alaska Native (Not Hispanic, Latino, or Spanish Origin):** A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment; for example, Navajo, Mayan, Tlingit, and so on.

11.    **Native Hawaiian or Other Pacific Islander (Not Hispanic, Latino, or Spanish Origin):** A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands; for example, Native Hawaiian, Guamanian or Chamorro, Samoan, Fijian, Tongan, and so on.

12.    **Asian (not Hispanic, Latino, or Spanish Origin):**  A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent; for example, Cambodian, Chinese, Asian Indian, Japanese, Korean, Malaysian, Pakistani, Filipino, Thai, Vietnamese, Laotian, Hmong, and so on.

13.    **Two or More Races:**  A person who identifies with at least one of the races specified in Paragraphs 8 through 12 above.

**B.     Other Definitions**

14.     **Claimant:**  Any person who submits a Claim Form (see Paragraph 32.4) seeking to participate in the settlement.  Such Claim Forms or requests should be submitted to the Settlement Administrator.

15.     **Color:**  Reference to discrimination based on "color" refers to discrimination against darker skinned people.

16.     **Effective Date:**  The date on which the Court enters the Decree as an Order of the Court.

17.     **Eligible Claimant:**  Any Claimant who the EEOC determines is eligible to receive a claim share.

18.     **Employee List:**  A list of all individuals employed by Patterson-UTI anywhere in the United States at any time during the period from January 1, 2006, to the Effective Date of this Decree.

19.     **Reporting Group:**  Patterson-UTI's Chief Executive Officer, President, Senior Vice President-Operations Support, Vice President-Human Resources, and others designated by the Chief Executive Officer from time to time, with respect to the activities provided in this Decree.

20.     **Judgment Amount:**  The sum of twelve million two hundred sixty thousand dollars and no cents ($12,260,000), entered as judgment against Defendant.

21.     **Minority or Minorities:**  Any person or people identified as belonging to any of the minority racial or ethnic groups defined in Paragraphs 8-12.

22.     **Minority Employee Group:**  The group of individuals on the Employee List who have self-identified as belonging to any of the minority racial or ethnic groups

defined in Paragraphs 8-13 above, and those identified on the Employee List as "race uncertain."

23.     **Potential Participants:**  All Minorities employed by Patterson-UTI at any time during the period from January 1, 2006, to the Effective Date of this Decree.

24.     **Settlement Administrator:**  The entity selected by EEOC and Patterson-UTI to manage the claims process and distribution of the Settlement Fund.

25.     **Settlement Fund:**  A non-reversionary fund in the amount of twelve million two hundred sixty thousand dollars and no cents ($12,260,000), to be deposited by Patterson-UTI with the Settlement Administrator.

## IV.  TERM AND SCOPE

26.     **Term:**  The duration of this Decree shall be four (4) years from the Effective Date.

27.     **Scope:**  The terms of this Decree shall apply to all of Patterson-UTI's facilities and locations nationwide, including but not limited to drilling rigs.

## V.  ISSUES RESOLVED

28.     This Decree resolves the claims alleged in the above-captioned lawsuit, and also constitutes a complete resolution of all of the Commission's claims of unlawful employment practices under Title VII that arise from Charge of Discrimination No. 541-2011-02063.

29.     Patterson-UTI, its officers, agents, successors, and assigns, will not interfere, and will not cause anyone else to interfere, with the relief herein ordered but, rather, shall cooperate in the implementation of this Decree.

## VI.  MONETARY RELIEF

30.     Patterson-UTI will not condition the receipt of individual relief under this

Decree upon any agreement by any Eligible Claimant to: (a) maintain as confidential the

terms of this Decree or the facts of the case; (b) waive his or her statutory right to file a

charge with any federal or state anti-discrimination agency; and/or (c) promise to resign

his or her employment and/or not to re-apply for a position with Patterson-UTI or any of

its parent, subsidiary, or affiliated entities at any of their facilities or locations.

31.     Judgment is hereby entered in favor of the Commission and against

Patterson-UTI in the total amount of twelve million two hundred sixty thousand dollars

($12,260,000), allocated to compensate Eligible Claimants as determined by the EEOC

in its sole discretion through the claims process set forth in Paragraph 32.  Up to ten

percent (10%) of this $12,260,000 may be allocated to lost wages and benefits.  The

Settlement Administrator will withhold appropriate taxes on each lost wage and benefits

award, and issue appropriate tax reporting forms to the Eligible Claimants.  Patterson-

UTI will pay its employer payroll tax due on the lost wage and benefits awards.

32.     **Claim Process and Distribution of Settlement Fund.**

32.1.  **Settlement Administrator:**  Within ten (10) business days of the

entry of this Decree, Patterson-UTI and the EEOC will appoint a

Settlement Administrator to handle the claim process for distribution of the

Settlement Fund.  All administration fees and costs will be paid by

Patterson-UTI pursuant to its agreement with the Settlement

Administrator, a copy of which agreement will be provided to the EEOC.

Said administration fees shall not be funded by or deducted from the

Judgment Amount. The Settlement Administrator will be responsible for: (a) receiving and holding the Settlement Fund in trust, until distribution; (b) establishing an informational website accessible to the EEOC and Potential Participants; (c) establishing an e-mail address accessible to Potential Participants to submit questions and Claim Forms; (d) establishing a toll-free telephone number accessible to Potential Participants; (e) responding to information requests from Potential Participants; (f) sending notices and Claim Forms to Potential Participants; (g) obtaining updated addresses for Potential Participants and re-mailing returned notices; (h) receiving and processing claims; (i) evaluating claims based on criteria provided by the EEOC; (j) communicating a recommended distribution list to the EEOC; (k) sending notice of claim share and notice of appeal rights to Claimants determined by the EEOC to be eligible; (l) sending notice of ineligibility and notice of appeal rights to Claimants and anyone else determined by the EEOC to be ineligible; (m) processing appeals and forwarding them to the EEOC for determination, together with the Settlement Administrator's recommendation; (n) issuing payments in accordance with a final distribution list provided by EEOC; (o) calculating withholding and payroll taxes and issuing tax reporting forms to each Eligible Claimant who receives a settlement payment; (p) filing tax returns and issuing IRS Form W-2's and 1099's with respect to the Settlement Fund; (q) communicating as necessary with the EEOC and Patterson-UTI; (r) tracking all necessary data regarding contact with

Potential Participants, Claimants, and Eligible Claimants; and (s) final distribution of the Settlement Fund.

32.2.   **Website, E-Mail Address, and Toll-Free Telephone Number:** Within twenty (20) calendar days after being retained, the Settlement Administrator will: (i) establish a website which will be accessible to the EEOC and Potential Participants; (ii) establish an e-mail address for purposes of communicating with Potential Participants by e-mail; and (iii) establish a toll-free telephone number which will be accessible to Potential Participants.  The website and/or e-mail address will be set up so that Potential Participants may obtain and submit a Claim Form electronically, if they so choose.  Information posted on the website and available on a recorded message on the toll-free telephone number will be limited to the general information included in notices sent to Potential Participants or update information as to status of the claim process (*i.e.*, claim-filing deadline; appeal deadline; projected distribution date when known; etc.).

32.3.   **Employee List:**  Within twenty (20) calendar days of the entry of this Decree, Patterson-UTI will provide the Settlement Administrator with a list of all individuals employed by Patterson-UTI anywhere in the United States at any time during the period from January 1, 2006, to the Effective Date of the Decree.  For each individual on the Employee List, Patterson-UTI will provide the following information from its electronic personnel records, human resources information system(s), and payroll records: (a) full name, including all known prior names or aliases; (b) last known

8

address; (c) date of birth; (d) social security number; (e) employee identification number, if any, and if different from his or her Social Security Number; (f) all known telephone numbers; (g) all known e-mail addresses; (h) any known emergency contact information; and (i) all known information regarding the individual's race and/or ethnicity.

32.4.   **Notice of Settlement and Claim Form:**  Within thirty (30) calendar days after the Settlement Administrator is retained, the EEOC will provide the Settlement Administrator with the following forms:  (a) Notice of Settlement; and (b) Claim Form.  The EEOC will afford Patterson-UTI an opportunity to provide input on the Notice of Settlement and Claim Form, which input the EEOC may accept or reject.

32.5.   **Mailing Notice of Settlement and Claim Form, and Utilization of Media:**  Upon receipt of the Employee List from Patterson-UTI, the Settlement Administrator will first utilize available resources to update addresses of individuals in the Minority Employee Group.  The Settlement Administrator will also utilize targeted media advertising in an effort to locate, identify, and communicate with Potential Participants.  Using the updated addresses and results of the media outreach, the Settlement Administrator will mail the Notice of Settlement, the Claim Form, and a return envelope addressed to the Settlement Administrator to each person in the Minority Employee Group.  The Notice and Claim Form will be mailed at the earliest possible date but not later than forty-five (45) calendar days after the Settlement Administrator is retained.  For each

individual in the Minority Employee Group for whom there is an e-mail address, the Settlement Administrator will also send the individual an e-mail Notice of Settlement with instructions on how to obtain and submit an electronic version of the Claim Form.

32.6.   **Return Mail Handling:**  For each piece of mail returned as undeliverable, the Settlement Administrator will make reasonable efforts, using services such as Accurint, to obtain an updated address, and will re-mail based on the updated address.

32.7.   **Claim-Filing Deadline:**  The final claim-filing deadline shall be the later of ninety (90) calendar days after the Notice of Settlement and the Claim Form are originally mailed or thirty (30) calendar days after the date the original Notice of Settlement and Claim Form are re-mailed.

32.8.   **Claim Evaluation:**  The Settlement Administrator will evaluate claims based on objective criteria provided by the EEOC, and will provide its recommendations to the EEOC and Patterson-UTI within ninety (90) calendar days after the final claim-filing deadline.  Patterson-UTI may provide in writing any input it has on the Settlement Administrator's recommendations to the EEOC within thirty (30) calendar days of Patterson-UTI's receipt of the recommendations.  If Patterson-UTI challenges a particular claim, it will provide the EEOC with a full explanation of the factual bases for any such challenge, together with any supporting evidence.  Although the EEOC will consider the Settlement Administrator's recommendations and Patterson-UTI's input in good faith,

the EEOC reserves the right to reject some or all of the Settlement Administrator's recommendations and/or Patterson-UTI's input.

32.9.  **Notices to Claimants:**  Within ninety (90) calendar days of receiving the Settlement Administrator's recommendations, the EEOC will provide the Settlement Administrator with the following: (a) a final approved eligibility and claim-share list; (b) a Notice of Eligibility and Claim Share Amount; (c) a Notice of Ineligibility; and (d) a Notice of Appeal Rights.  Upon receiving these materials from the EEOC, the Settlement Administrator will mail to each Eligible Claimant a Notice of Eligibility and Claim Share Amount, a Notice of Appeal Rights, the Claimant Acceptance, Waiver, and Release of Claims  [Exhibit A, attached "Release of Claims"], and a return envelope addressed to the Settlement Administrator.  To each Claimant determined to be ineligible, the Settlement Administrator will mail a Notice of Ineligibility, a Notice of Appeal Rights, and a return envelope addressed to the Settlement Administrator.  All of the three notices referenced in this paragraph will include instructions on how a Claimant may submit necessary documents via e-mail or other electronic submission process established by the Settlement Administrator.

32.10.  **Receiving Acceptance and Release Forms:**  The Settlement Administrator will receive, track, and hold all Release of Claims, whether submitted by mail, in person, or electronically.

32.11.  **Processing Appeals:**  The Settlement Administrator will receive and forward any appeals to the EEOC, together with the Settlement Administrator's recommendation.  The EEOC will make a final determination on each appeal.  If any adjustment is made as a result of an appeal, the Settlement Administrator will send the Claimant a Notice of Eligibility and Claim Share Amount, and Release of Claims form reflecting the revised Claim Share amount.  Such Claimants will be allowed thirty (30) calendar days to accept or reject the revised Notice of Eligibility and Claim Share Amount and to return the signed Release of Claims form to the Settlement Administrator.

32.12.  **Unaccepted Claim Shares:**  For any Claimant sent a Notice of Eligibility and Claim Share Amount, if the Claimant does not timely return a signed Release of Claims form or file an appeal by the deadline provided, the Claimant will be deemed to have rejected the claim share. EEOC may authorize the acceptance of late-submitted Release of Claims forms, so long as such acceptance does not delay the final distribution. Claim shares deemed to be rejected under this paragraph will be re-distributed to other Eligible Claimants, as determined by the EEOC.

32.13.  **Preliminary Distribution List:**  Upon final determination of all appeals, the EEOC will provide the Settlement Administrator and Patterson-UTI a Preliminary Distribution List, detailing the Claimants and the Claim Share amount awarded to each.

32.14.  **Patterson-UTI's Opportunity to Provide Additional Input:**

Within twenty (20) calendar days of being provided the EEOC's

Preliminary Distribution List, Patterson-UTI will inform EEOC of any

additional input it has regarding the Final Distribution List.  Patterson-UTI

has no standing to challenge EEOC's determinations, which are entirely in

the discretion of the EEOC.  If Patterson-UTI has no additional input, it will

promptly so inform the EEOC.

32.15.  **Establishment of Settlement Fund:**  The Settlement

Administrator will establish an account to hold in trust the Settlement Fund

no later than the date on which the EEOC notifies the Settlement

Administrator and Patterson-UTI that a Final Distribution List has been

issued pursuant to Paragraph 32.16.  The Settlement Administrator will

notify EEOC and Patterson-UTI when the trust account is established and

ready for deposit of the Settlement Fund.  All interest earned on the

Settlement Fund will accrue to the Settlement Fund.

32.16.  **Final Distribution:**  Within twenty (20) calendar days after

receiving Patterson-UTI's additional input or notice of no additional input,

the EEOC will provide a Final Distribution List to the Settlement

Administrator, which list will include any adjustments made based on

Patterson-UTI's input, and the EEOC will notify Patterson-UTI that a Final

Distribution List has issued.  No later than five (5) business days after it

receives notice from the EEOC that a Final Distribution List has been

issued, Patterson-UTI will pay twelve million two hundred sixty thousand

dollars ($12,260,000) to the Settlement Administrator for deposit into the

Settlement Fund for the Eligible Claimants, along with any of its employer

payroll tax due pursuant to Paragraph 32.2.  (The deadline for Patterson-

UTI to deposit the payroll tax may be extended by the Parties if the

Settlement Administrator notifies the Parties that it needs additional time

to calculate the payroll tax due.)  Within ten (10) days of receiving the

Final Distribution List from the EEOC, the Settlement Administrator will

issue and mail checks to Eligible Claimants in accordance with the Final

Distribution List.

32.17.  **Returned and/or Uncashed Checks:**  If any checks are returned

as undeliverable, the Settlement Administrator will attempt to find an

updated address and will provide the EEOC with the name, last known

address, date of birth, and social security number of the Eligible Claimant.

If an updated address can be found, the check will be re-mailed.  If an

Eligible Claimant fails to present his or her check after ninety (90) calendar

days of it being issued, the Settlement Administrator will provide the

EEOC with the name, last known address, date of birth, and social

security number of the Eligible Claimant, and the EEOC may make

additional efforts to locate the Eligible Claimant.  If any of the Settlement

Fund remains undistributed after exhausting these efforts to locate the

Eligible Claimants, the remaining balance of the Settlement Fund shall be

paid in equal parts to the NAACP Legal Defense and Educational Fund

(Earl Warren Scholarship), the MALDEF Scholarship Fund, and the American Indian College Fund.

32.18. **Tax Reporting Forms:** The Settlement Administrator will prepare and mail a Form 1099 tax reporting form to each Eligible Claimant who receives a payment under this Decree for emotional distress and other non-economic damages. Eligible Claimants are responsible for paying taxes on income reported on a 1099 form. The Settlement Administrator will also prepare and mail a Form W-2 tax reporting form to each Eligible Claimant who receives a payment under this Decree for wages and benefits (back pay and/or front pay). Taxes on this portion of the settlement will be paid as provided in Paragraph 32.2.

32.19. **Notice of Checks Issued:** Within three (3) business days after mailing any payment to Eligible Claimants or charities, the Settlement Administrator shall submit to the EEOC and Patterson-UTI copies of the checks issued.

## VII.  EQUITABLE RELIEF

### A.    *Injunctive Relief*

33.    Patterson-UTI, its officers, agents, successors, and assigns are permanently enjoined from engaging in, or directing anyone to engage in, any employment practice which discriminates on the basis of race, color, and/or national origin.

34.    Patterson-UTI, its officers, agents, successors, and assigns are permanently enjoined from engaging in, or directing anyone to engage in, reprisal or

retaliation of any kind against any person because of such person's opposition to any practice made unlawful under Title VII. Patterson-UTI shall not retaliate against a person because such person brings an internal complaint of discrimination with Patterson-UTI; because such person files or causes to be filed a charge of discrimination with the Commission or any other agency charged with the investigation of employment discrimination complaints, or whose statements serve as the basis of a charge; or because such person testifies or participates in the investigation or prosecution of an alleged violation of Title VII. Discrimination, harassment and/or retaliation on which Patterson-UTI takes prompt, appropriate, corrective action shall not give rise to a claim for breach of this Decree.

### B.   EEO Policy Review

35.   Within one hundred eighty (180) days of the entry of this Decree, Patterson-UTI shall, in consultation with the New Vice President appointed pursuant to Paragraphs 43-47, review its existing equal employment opportunity ("EEO") policies and procedures, and develop and implement new and/or revised EEO policies and procedures to ensure equal employment opportunities are afforded to all applicants and employees, regardless of race, color, and/or national origin. During the second and subsequent years of this Decree, Patterson-UTI may develop additional policy and procedural revisions to ensure equal employment opportunities.

36.   Patterson-UTI's written EEO policies and procedures must include, at a minimum:

36.1.   A strong and clear commitment to prevent unlawful race, color, and national origin discrimination, harassment, and retaliation;

16

36.2. A definition of disparate treatment based on race, color, national origin, and retaliation;

36.3. A statement that discrimination based on race, color, and/or national origin or retaliation is prohibited and will not be tolerated;

36.4. Provisions to guard against discriminatory decision-making in: (a) hiring Native Americans, African Americans, and Hispanics; (b) the terms and conditions of employment, including but not limited to job assignments and training opportunities; (c) enforcement of policies and procedures; and (d) discipline, resignation, and discharge;

36.5. A clear and strong encouragement of persons who believe they have been discriminated or retaliated against to report such concerns;

36.6. The contact information for reporting concerns about discrimination, harassment, and/or retaliation;

36.7. An assurance that Patterson-UTI will promptly investigate, or cause to be investigated, allegations of unlawful discrimination, harassment, and/or retaliation;

36.8. An assurance that timely, appropriate, corrective action will be taken by Patterson-UTI;

36.9. A description of the consequences, up to and including termination, that will be imposed upon violators of Patterson-UTI's anti-discrimination and anti-retaliation policies; and

36.10. An assurance of non-retaliation for persons who report unlawful discrimination, harassment, and/or retaliation and for witnesses who

provide testimony or assistance in the investigation(s) of such unlawful discrimination, harassment, and/or retaliation.

37.     Patterson-UTI's written EEO policies shall be posted, in English and Spanish, in prominent locations frequented by employees at all of Patterson-UTI's facilities and locations in the United States within thirty (30) days of the effective Date of this Decree.  Patterson-UTI will also distribute or mail a copy of the policies annually to each current employee.  Patterson-UTI's written EEO policies shall be distributed, in English and in Spanish, to all new employees as part of orientation.  Patterson-UTI shall make its written EEO policies available in alternative formats as necessary for persons with cognitive and print disabilities that may prevent them from reading the policies. Alternative formats will include but not be limited to an audio format.

38.     All disciplinary actions taken against employees for violation of Patterson-UTI's anti-discrimination and/or anti-retaliation policies will be retained in the violator's personnel files and records.  Patterson-UTI shall not retain a complaint of race, color, or national origin discrimination, harassment , and/or retaliation or any documents evidencing an investigation of such a complaint in any of a complainant's personnel files or records; all such documents, instead, must be retained in a separate, secure location.

## C.     Training

39.     At least annually, Patterson-UTI shall provide EEO training for all its employees.  Under this provision, employees will be trained, at a minimum, in the following areas:  (a) Patterson-UTI's policy and procedures for reporting alleged discrimination, harassment, and/or retaliation; (b) defining and understanding the kind of

conduct which may constitute unlawful discrimination, harassment, and/or retaliation; (c) the penalties for engaging in discriminatory and/or retaliatory behavior; (d) the responsibilities of employees and employers in maintaining a work environment free of discrimination, harassment, and retaliation; (e) Patterson-UTI's non-retaliation policy; and (f) policies related to application, job assignment, promotion, and demotion procedures; training opportunities; and separations.  All training under this Paragraph 42 shall be at Patterson-UTI's selection and expense.  Unless otherwise specified, training may be by live presentation, on-line interactive training, computer training, or any combination of the foregoing.  Live trainers shall be selected by Patterson-UTI.  The training will be conducted as follows:

39.1.  **Non-managerial Employees:**  Patterson-UTI will provide all non-managerial employees at least one (1) hour of annual training, which training may be provided in segments.  Attendance at such training will be mandatory for every employee.  At least one-half (1/2) hour of this training will focus on race, color, and national origin discrimination, harassment, and retaliation, and the procedures for reporting such discrimination, harassment, and retaliation.  Patterson-UTI will require employees who are newly hired into a non-managerial position to complete at least one-half (1/2) hour of the requisite one (1) hour of training within ten (10) calendar days of being hired.

39.2.  **Managerial and Supervisory Employees:**  Patterson-UTI will require all individuals who work in a managerial or supervisory capacity, including but not limited to all Rig Managers (formerly known as Tool

Pushers) and Drillers, to receive four (4) hours of training annually regarding Title VII and other federal anti-discrimination laws.  The training must directly address race, color, and national origin discrimination, harassment, and retaliation, and the proper methods of receiving, communicating, investigating (where applicable), and ameliorating discrimination, harassment, and retaliation.  Patterson-UTI shall emphasize to managerial and supervisory employees that due to their positions of power, such employees:  (a) must be particularly vigilant not to discriminate, whether consciously or because they rely on subconscious stereotypes; (b) must be sensitive to how their actions or words might be perceived by subordinate employees; and (c) must avoid the temptation to retaliate against an employee because a complaint or report is made, or might be made, against them.

39.3.  **Human Resource Employees:**  Patterson-UTI will require all individuals who work in a human resource capacity to receive at least ten (10) hours of training annually regarding Title VII and other federal anti-discrimination laws; addressing race, color, and national origin discrimination, harassment, and retaliation; and the proper methods of receiving, communicating, investigating (where applicable), and ameliorating discrimination, harassment, and retaliation, including the proper procedures for documenting and preserving evidence of such conduct, archiving Patterson-UTI's investigation of complaints and reports,

and detailing the consequences and results of the investigation where discrimination, harassment, and/or retaliation is found.

39.4.  **Training on Investigative Techniques:**  All human resources, security, and in-house legal personnel with responsibility for responding to or investigating complaints or reports of discrimination, harassment , and/or retaliation shall be provided seven (7) additional hours of annual training instructing on accepted professional standards for receiving and investigating such complaints, including such matters as witness interview techniques, other evidence-gathering techniques, maintaining investigative notes and records, legal analysis of the evidence, and methods for eliminating and ameliorating violations of anti-discrimination law.  Investigation of complaints or reports of discrimination and/or harassment based upon race, color, and/or national origin and/or of retaliation, must be personally conducted by human resources, security, or in-house legal personnel or by outside counsel or investigations experts. Responsibility for conducting such investigations cannot be delegated to any Patterson-UTI employees who have not received the training required by this Paragraph 39.4.

40.    Patterson-UTI shall provide the Commission with copies of all then-existing training materials within thirty (30) days of the Effective Date of this Decree for all trainings required by Paragraph 39.

**D.     Notice Posting**

41.     Within five (5) business days after the Effective Date of this Decree, Patterson-UTI shall post at each of its facilities and locations in the United States, including but not limited to drilling rigs, in a conspicuous place frequented by employees, the Notice attached as Exhibit B to this Decree.  The Notice shall be the same type, style, and size as set forth in Exhibit B.  The Notice shall remain posted for the duration of this Decree.  If the Notice becomes defaced or illegible, Patterson-UTI will replace it with a clean copy.  Patterson-UTI shall certify to the Commission, in writing, within ten (10) days of the Effective Date of this Decree that the Notice has been properly posted, and shall provide recertification in each of the periodic reports required under the Reporting provisions of this Decree.

**E.     EEO Compliance as a Component of Management Evaluation**

42.     Patterson-UTI shall, within sixty (60) days of the Effective Date of this Decree, and at least continuously for the duration of this Decree, develop and implement an annual written performance report for Rig Managers (formerly known as Tool Pushers), Superintendents, Area Managers, and Regional Vice Presidents.   Such annual performance report will include a component(s) for measuring the evaluatee's efforts in the following areas: (a) EEO compliance; (b) compliance with policies and laws prohibiting discrimination, harassment, and retaliation; and (c) compliance with this Decree.

### F.     Newly Created Vice President Position

43.     **Introduction:**  Patterson-UTI is committed to monitoring equal

employment opportunity practices and periodic reporting to its Chief Executive Officer

regarding such practices.

44.     **Creation of New Position:**  Within ninety (90) days after the Effective

Date of this Decree, Patterson-UTI will create and fill a new, regular (i.e. no fixed term),

full-time Vice President position ("New VP").  The New VP shall be selected and hired

by Patterson-UTI and report directly to Patterson-UTI's Chief Executive Officer.

Patterson-UTI will hire a qualified EEO professional for this New VP position.  A

"qualified EEO professional" is a person with at least five (5) years of professional work

experience in the areas of Human Resources and/or Equal Employment Opportunity,

and a four-year college degree or at least 120 hours of course work in the areas of

Human Resources and/or Equal Employment Opportunity.

45.     **Replacement of New VP:**  In the event the New VP is unable or unwilling

to continue to serve, Patterson-UTI shall select another qualified EEO professional to fill

the position.

46.     **New VP Duties and Responsibilities Regarding this Decree:**  During

the term of this Decree, the New VP's duties and responsibilities will include the

following:  (a) to evaluate whether Patterson-UTI has taken appropriate and reasonable

action to implement the terms of this Decree and to protect minority employees from

disparate treatment, hostile work environment, and retaliation; (b) to review and assess

Patterson-UTI's diversity policies and programs; (c) to formulate appropriate

recommendations following completion of (a) and (b); (d) to review, assess, and

evaluate results from the employee survey, required under Paragraph 49; (e) to review, assess, and evaluate results from exit interviews required under Paragraph 50; (f) to review, assess, and evaluate the results of the information gathered under Paragraph 52; (g) to conduct meetings with Patterson-UTI's Reporting Group at four (4)-month intervals to report compliance with the terms of this Decree, progress in addressing prior recommendations of the New VP, and minority representation in rig and management positions; (h) to make recommendations based on information gathered from employee surveys, exit interviews and the information complied under Paragraph 52; (i) to make additional recommendations, if any, as are appropriate regarding compliance with this Decree and other EEO matters; (j) to compile and review the information Patterson-UTI must report to the EEOC pursuant to this Decree; (k) to verify the accuracy of reports Patterson-UTI provides to the EEOC pursuant to this Decree; (l) to respond to EEOC requests for information relating to this Decree, its enforcement, and Patterson-UTI's compliance with the Decree; and (m) to meet with the EEOC as necessary to explain, discuss, and respond to questions about Patterson-UTI's reporting and compliance. Patterson-UTI retains the right to representation by legal counsel at any such meeting.

47.   **Access to Region, Premises, Employees, and Information:**  The New VP shall have access to all necessary information, and shall visit a representative sample of drilling rigs and offices in each of Patterson-UTI's regions during each year of the Decree to receive information from and provide information to the employees.

### G.    Outreach

48.    Patterson-UTI will sponsor outreach activities nation-wide to attract qualified Minority applicants in a good faith effort to recruit for all of its facilities qualified Minorities consistent with their availability in the qualified work force.

49.    Within twelve (12) months of the Effective Date of this Decree, Patterson-UTI will select by random sample and interview twenty percent (20%) of its drilling rig and trucking employees regarding treatment of Minorities in the workplace.  The interview questions will be developed by Patterson-UTI and submitted to the EEOC to review and provide input.  When the New VP is appointed, the New VP will review these questions and Patterson-UTI may modify them during the term of this Decree with the approval of the EEOC.  The results of the interviews will be shared with the New VP and Patterson-UTI's Reporting Group, along with any pro-active action plans to address the interview findings.

50.    For the duration of this Decree, Patterson-UTI will make three attempts on different days to conduct an exit interview of all Minority employees within thirty (30) days of their separation from Patterson-UTI.  The exit interview questions will be developed by Patterson-UTI in consultation with the New VP and submitted to the EEOC to review and provide input.  Patterson-UTI may modify these questions during the term of this Decree with the approval of the EEOC.  The results of the interviews will be shared with the New VP and Patterson-UTI's Reporting Group every four (4) months, along with any pro-active action plans to address the interview findings.

## VIII.   RECORD KEEPING AND REPORTING PROVISIONS

51.     For the duration of this Decree, Patterson-UTI agrees to maintain such records as are necessary to demonstrate its compliance with this Decree, including but not limited to the documents specifically identified below.  For the duration of this Decree and for one (1) year following termination of this Decree, Patterson-UTI shall retain the following hard-copy records (which may be maintained solely in electronic format) and electronic records from all facilities and locations nation-wide, including but not limited to drilling rigs, relating to activities during the duration of the Decree:

51.1.   All applications and/or resumes for promotions;

51.2.   All records used in the selection process regarding selection of successful candidates;

51.3.   All records regarding development plans, training programs, and cross-training (including registrations, if any, and completion);

51.4.   All records regarding job assignments (*i.e.*, the job classification, hours, dates, and rig);

51.5.   All complaints of discrimination and/or harassment based upon race, color, national origin, and/or retaliation, and all records of the investigation of those complaints;

51.6.   All personnel files and records;

51.7.   All payroll records and work schedules;

51.8.   All job postings;

51.9.   All disciplinary notices, including but not limited to discharges; and

51.10.  All records documenting employment terminations.

This paragraph requires the retention of above-described existing documents and records and those that are hereinafter created and maintained in the normal course of Patterson-UTI's business activities.

52.    Every six (6) months for the duration of this Decree, Patterson-UTI shall provide to the New VP for review and analysis the following information in electronic (Excel or .pdf) format:

52.1.  Identify each promotion filled to Driller and Rig Manager (formerly known as Tool Pusher) positions.  For each promotion filled during that six (6) month period, provide the following information:

(a)     all applications;

(b)     names of all candidates considered for the position;

(c)     EEO-1 race/national origin of candidates considered;

(d)     copies of documents created throughout interview process, including but not limited to interview notes, scoring of interview, and ranking(s) of candidates considered;

(e)     for each candidate not selected, provide reason(s);

(f)     for candidates selected, provide date of selection and reason(s); and

(g)     name, EEO-1 race/national origin, and position of individual(s) making selection decisions.

52.2.  Identify each individual who enrolled in the competency development program(s) for Driller and Rig Manager (formerly known as

Tool Pusher) positions.  For each individual who was enrolled during that six (6) month period, provide the following information:

(a)     name, EEO-1 race/national origin, and position of individuals registered;

(b)     courses completed;

(c)     training materials, if applicable;

(d)     name, EEO-1 race/national origin, and position of any Patterson-UTI employees who conducted the training if they are Patterson-UTI employees; and

(e)     for training conducted by individuals who are not Patterson-UTI employees, the name of the training vendor, the name of the trainer or trainers, and any information known about the trainers' qualifications.  Patterson-UTI also will make a good-faith effort to include the trainers' race/ethnicity based on the information known to Patterson-UTI (*i.e.*, visual identification or information obtained from the training vendor).

52.3.   Identify each separation of a Minority Employee occurring during the 6-month period. For each separation, provide the following information in writing:

(a)     name, EEO-1 race/national origin, and position of employee(s) separated;

(b)     date of separation and reason(s) for separation;

(c)     copies of documents created throughout separation process, including records of any investigation conducted; and

(d)     name, EEO-1 race/national origin, and position of individual(s) making separation decisions.

53.     Every six (6) months for the duration of this Decree, Patterson-UTI shall provide to the EEOC reports for each six (6)-month period following the entry of this Decree.  The reports shall be due forty (40) calendar days following the respective six (6)-month period, except the final report, which shall be submitted to the Commission eight (8) weeks prior to the date on which the Consent Decree is to expire.

54.     **Reporting Requirements:**  Each report shall provide the following information:

54.1.  **Reports of Discrimination:**  Identify each applicant and employee complaint of alleged race, color, and/or national origin discrimination, harassment, and/or retaliation.  For each such complaint (formal or informal, and whether oral or written) during that six (6)-month period, provide the following information in writing:

(a)     name, EEO-1 race/national origin, and position of individual making complaint;

(b)     description of complaint or copy of complaint;

(c)     name, EEO-1 race/national origin, and position of individual(s) who conducted any investigation;

(d)     copy of all notes, memoranda, e-mails, and documentation used and/or generated in any investigation;

(e)     name, EEO-1 race/national origin, and position of individual(s) contacted and/or interviewed;

(f)     any actions taken by Patterson-UTI in response to the complaint.  Provide copies of written document(s) which reflect the complaint and the action taken as a result of the complaint; and

(g)     name, EEO-1 race/national origin, and position of individual(s) making decision(s).

54.2.  **Training:**  For each training program required under Paragraph 39 and conducted during the reporting period, Patterson-UTI shall submit a record reflecting all individuals required to be trained, the date the training was completed, the name of the primary trainer, and a copy of the core materials.

54.3.  **Posting of Notice**:  Patterson-UTI shall re-certify to the Commission that the Notices required to be posted under Paragraphs 37 and 41 of this Decree have remained posted during the reporting period or, if removed, were promptly replaced.

54.4.  **Policy Review**:  Patterson-UTI shall report on the status of the EEO policy review process required under Paragraph 35, above.

54.5.  **Information Requests:**  The EEOC shall have the right to request non-privileged information from Patterson-UTI which demonstrates compliance with this Decree over the duration of this Decree.  Patterson-UTI shall comply with a request for such information within thirty (30)

calendar days of the request or such longer period to which the Parties agree.

## IX.  RETENTION OF JURISDICTION AND ENFORCEMENT OF DECREE

55.      This Court shall retain jurisdiction of this lawsuit for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate equal employment opportunities for employees.

56.      There is no private right of action to enforce Patterson-UTI's duties and obligations under the Decree; only the Commission or its successors or assigns may enforce compliance herewith.

57.      The Commission may petition this Court for compliance with this Decree at any time during which this Court maintains jurisdiction over this action.  Should the Court determine that Patterson-UTI has not fully complied with this Decree, appropriate relief, including but not limited to extension of this Decree for such period as may be necessary to remedy Patterson-UTI's non-compliance, may be ordered.

58.      Absent extension, this Decree shall expire by its own terms at the end of the forty-eighth (48th) month from the Effective Date without further action by the Parties.

## X.  EEOC AUTHORITY

59.      With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority and that do not arise out of the claims asserted in this lawsuit.

## XI.  COSTS AND ATTORNEY'S FEES

60.     EEOC and Patterson-UTI shall each bear its own costs and attorneys'
fees associated with this matter.  Payment to Eligible Claimants from the Settlement
Fund shall be in full and final settlement of all monetary claims, including attorneys' fees
and costs.

## XII.  NOTICE

61.     Unless otherwise indicated, any notice, report, or communication required
under the provisions of this Decree shall be sent by certified mail, postage prepaid, as
follows:

Supervisory Trial Attorney                          Office of the General Counsel
EEOC Denver Field Office                            Patterson-UTI Drilling Company LLC
303 E. 17th Avenue, Suite 410                       450 Gears Road, Suite 500
Denver, CO  80203                                   Houston, TX 77067


                                                    Nancy Abell
                                                    Paul Hastings LLP
                                                    515 South Flower Street, Suite 2500
                                                    Los Angeles, CA 90071

## XIII.   OTHER PROVISIONS

62.     **Complete Financial Obligations:**  This Decree constitutes the complete
agreement between the Parties regarding the financial obligations imposed on
Patterson-UTI and the complete settlement of EEOC's claims arising from the charges
referenced herein, and supersedes all prior and contemporaneous promises and
agreements of any kind with respect to such matters in this Decree.

63.     **Severability:**  If one or more provisions of this Decree are rendered
unlawful or unenforceable by an act of Congress or by a decision of the Tenth Circuit

Court of Appeals or the United States Supreme Court, the Parties shall attempt to agree upon what amendments to this Decree, if any, are appropriate to effectuate the purposes of this Decree.  In any event, the unaffected provisions will remain enforceable to the maximum extent permitted by law.

64.     **Amendment:**  This Decree may not be amended or modified except upon written agreement of the Parties and approval of the Court.  Any proposed amendment to this Decree must be signed by a duly authorized representative of each of the Parties.  Such amendment must then be presented to the Court by joint motion of the Parties.

65.     **Computation of Time Periods:**  In computing any period of time prescribed or allowed by this Decree, unless otherwise stated, such computation shall be made consistent with the Federal Rules of Civil Procedure.

66.     **Interpretation:**  The terms of this Decree are the product of joint negotiations and shall not be construed as having been authored by one of the Parties rather than another.

67.     **Counterparts:**  This Decree may be executed in more than one counterpart, each of which shall be deemed as original, but all of which shall constitute one and the same instrument.  In addition, facsimile signatures shall be deemed as valid as original signatures.

## XIV. SIGNATURES

68.     The Parties agree to the entry of this Decree, subject to final approval by the Court.

**SO ORDERED**, this  17th  day of  April , 2015.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE

BY CONSENT:

EQUAL EMPLOYMENT OPPORTUNITY                    PATTERSON-UTI DRILLING COMPANY LLC
COMMISSION


By: _____                    By: _____
     Mary Jo O'Neill                                 William Andrew Hendricks, Jr.
     Regional Attorney                               Chief Executive Officer

Date: _____                    Date: _____




APPROVED AS TO FORM:


_____                 _____
Rita Byrnes Kittle                              Nancy L. Abell
Supervisory Trial Attorney                      PAUL HASTINGS LLP
EEOC Denver Field Office                        515 South Flower Street, Suite 2500
303 E. 17th Avenue, Suite 510                   Los Angeles, CA 90071
Denver, CO 80203                                Attorneys for Defendant

Attorney for Plaintiff EEOC                     Patterson-UTI Drilling Company LLC

**EXHIBIT A**

**CLAIMANT ACCEPTANCE, WAIVER, AND RELEASE OF CLAIMS ("Release")**

In consideration for at least $_____ paid to me by or on behalf of Patterson-UTI Drilling Company LLC in connection with the resolution of *EEOC v. Patterson-UTI Drilling Company LLC*, (*insert case number* in the U.S. District Court, District of Colorado) ("Lawsuit"), I hereby waive, release and agree not to sue on any "Claims" against Patterson-UTI Drilling Company LLC and the Releasees that I had before the date I signed this Release.  The term "Claims" means claims of race, color, and national origin discrimination, harassment, and retaliation that were set forth in the Lawsuit and that arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and under the Civil Rights Act of 1991, 42 U.S.C. 1981a, including claims for damages, equitable relief, attorneys' fees, and costs.  The term "Releasees" means Patterson-UTI Drilling Company LLC and its officers, agents, successors, assigns and insurers.

Date:_____       Signature:_____

Print Name:_____

Home Address:_____
                             Street Address                         Apt. or Unit Number

_____
City                                  State            Zip Code

Date of Birth: _____       Last 4 Digits of SSN: _____

**EXHIBIT B (on Patterson-UTI letterhead)**

**NOTICE TO EMPLOYEES**

The following notice is being posted pursuant to the terms of a Consent Decree reached between the Parties in *EEOC v. Patterson-UTI Drilling Company, LLC,* filed in the United States District Court for the District of Colorado, Civil Action No. [*insert Case Number*].

Management of Patterson-UTI wishes to emphasize the Company's fundamental policy of providing equal employment opportunity in all of its operations and in all areas of employment practices.  Patterson-UTI seeks to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age, disability, genetic information or other protected group status.  This policy extends to insurance benefits and all other terms, conditions and privileges of employment.

Pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), it is unlawful for an employer to discriminate based upon the race, color, and/or national origin of an applicant or employee.  Further, it is unlawful for any employer to retaliate against an applicant or employee because he or she opposed discriminatory employment practices or because he or she filed a charge of discrimination with any local, state, or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Patterson-UTI respects the right of its employees and applicants for employment to work in an environment free from discrimination, harassment, and retaliation.  Accordingly, Patterson-UTI reaffirms its commitment to complying with local, state, and federal anti-discrimination law, in that it is our policy to prohibit all discrimination based on race, color, and/or national origin and/or retaliation.

Any employee who believes that he or she has suffered discrimination, harassment, and/or retaliation has the right to contact the Silent Whistle Hotline at (866) 397-1933, https://www.silentwhistle.com.  Any employee who believes he or she has suffered discrimination or harassment on the basis of age, race, color, religion, sex, pregnancy, national origin, disability, and/or genetic information also has the right to contact the EEOC directly at 1-800-669-4000.  In compliance with federal law, no official at Patterson-UTI will retaliate against an employee who makes an internal complaint or report of discrimination or who contacts the EEOC or its state counterpart.

This Notice shall remain posted for the term of four (4) years.

Patterson-UTI Drilling Company LLC


By:_____        Date:_____